Michael E. BARR and Judy M.
Barr, Appellants,

v.

WHITE OAK STATE BANK, Appellee.

No. 12–82–0139–CV.

Court of Appeals of Texas,
Tyler.

Aug. 30, 1984.

Rehearing Denied Oct. 4, 1984.

Mark Strachan, Longview, for appellants.

Steve McDaniel, Longview, for appellee.

McKAY, Justice.

This is an appeal from a judgment rendered upon a directed verdict in a suit for conversion and wrongful disposition of collateral in violation of Chapter 9 of the Texas Business and Commerce Code. The question in this case involves the priority between secured creditors who hold a security interest in the same collateral.

The record shows that on December 3, 1975, L.E. Fowler, d/b/a White Oak Lawn & Garden Center, executed a promissory note payable to the White Oak State Bank (Bank) in the principal sum of $25,000.00. The note specified that it was secured by a security interest in inventory, equipment, accounts receivable, and life insurance. The security agreement which was on the back of the note was not signed by L.E. Fowler; however, on the face of the note the borrower acknowledged that the security agreement was completed.

On December 5, 1975, the Bank filed three financing statements with the Secretary of State covering various equipment and inventory located at White Oak Lawn & Garden Center.

In December 1977 L.E. Fowler (Fowler) sold White Oak Lawn & Garden Center to Reginald G. Winslow (Winslow).

On December 12, 1977, Winslow executed an installment note in the principal sum of $51,500.00, along with a security agreement granting the Bank a security interest in the inventory located at White Oak Lawn & Garden Center. The note specified that the purpose of the credit was to purchase inventory. The note was additionally secured by a $10,000.00 certificate of deposit pledged to the Bank as security by Fowler and a $20,000.00 certificate of deposit pledged as security by Winslow. On the same day, Winslow executed a UCC–1 Financing Statement reflecting the security interest in the inventory. A portion of the proceeds of the $51,500.00 loan was used to pay off the $25,000.00 note executed by Fowler to the Bank. In addition, on December 12, 1977, Fowler signed a guaranty agreement in consideration of the credit extended to Winslow by the Bank. On December 22, 1977, the $25,000.00 note executed by Fowler was marked "paid" by the Bank.

On December 14, 1977, Winslow executed a promissory note in the principal sum of $20,000.00, payable to Michael E. Barr and Judy M. Barr (Barrs), along with a financing statement and a security agreement granting the Barrs a security interest in the inventory, merchandise, equipment, tools, and other materials located at the White Oak Lawn & Garden Center. The $20,000.00 loan from the Barrs to Winslow was used to purchase the $20,000.00 certificate of deposit which Winslow pledged as security for the $51,500.00 loan from the Bank to Winslow.

On December 27, 1977, the UCC–1 Financing Statement executed by Winslow to the Barrs was filed with the Secretary of State.

On December 28, 1977, the UCC–1 Financing Statement executed by Winslow to the Bank was filed with the Secretary of State. The financing statement securing the Barrs covered the inventory, tools, and equipment located at the White Oak Lawn & Garden Center. The financing statement securing the Bank covered only the inventory located at the White Oak Lawn & Garden Center.

In September 1978 Winslow defaulted on the note owed to the Bank and on the note owed to the Barrs. The Bank took possession of the inventory, equipment, tools, and merchandise located at the White Oak Lawn & Garden Center and sold the items at public sale. The proceeds from the sale were applied toward the indebtedness owed by Winslow to the Bank. The Bank did not notify the Barrs with regard to the foreclosure.

On November 29, 1978, the Bank's note was paid in full with the amount of $310.00 left remaining.

After Winslow's default and the Bank's foreclosure, the Barrs brought suit against Winslow on the note and obtained a judgment in the amount of $25,217.94. The judgment was unpaid, consequently the Barrs brought suit against the Bank for actual and exemplary damages under the theories of violation of Chapter 9 of the Texas Business & Commerce Code and conversion.

After a trial to the jury the court withdrew the case from the jury and found that the Bank had a first and valid lien on the inventory and machinery, and that the Bank properly foreclosed on its security interest in the collateral, and that the proceeds from the sale of the collateral exceeded the amount owed to the Bank by $310.00. The court further found that the Barrs had actual notice of the foreclosure.

The court rendered judgment in favor of the Barrs and against the Bank in the amount of $310.00, and the Barrs appeal.

The question in this case concerns the priority between two secured creditors. In order to determine the question of the priority between the two secured creditors, the effect of the filed financing statements under the name of Fowler must be determined.

The question in this case concerns whether the 1977 transaction between the Bank and Winslow relates back and is secured by the prior filing by the Bank made in 1975 with regard to its transaction with Fowler. In other words the question is whether prior financing statements filed on the same collateral operate to secure the same secured creditor for a new loan to a new debtor when the original note was paid, but the original debtor guaranteed the new loan.

The Barrs contend that the trial court erred in holding that the Bank had a first and valid lien on the inventory and machinery to secure its loan to Winslow. The Barrs contend that they perfected their security interest in the inventory prior to the Bank perfecting its security interest in the inventory; therefore, their security interest is superior to the Bank's because it was filed on December 27, 1977, and the Bank's was filed on December 28, 1977.

The Barrs argue that the Bank cannot claim priority through the security interest in the inventory through its transaction with Fowler. The Barrs assert that Fowler did not sign a security agreement with the Bank, and even if the Bank had a valid security agreement with Fowler, it terminated when Winslow paid off the note from Fowler to the Bank. The Barrs argue that if the Bank had been secured through Fowler, it would have been unnecessary for the Bank to file a new financing statement executed by Winslow on December 28, 1977.

The Barrs additionally assert that even if the Bank had been secured through Fowler's financing statement, it would be limited to the amount of the debt owed by Fowler. The Barrs argue that the Bank advanced an additional $32,069.93 to Winslow which was secured by a security interest inferior to the Barrs'. The Barrs argue that they are entitled to the proceeds from the inventory in excess of the amount of $19,430.07 owed by Fowler to the Bank.

The Barrs argue that they had a security interest in the equipment, tools, and merchandise, and the Bank's security interest did not cover the tools, equipment, and other merchandise. The financing statement executed by Winslow to the Bank covered only the inventory.

The Bank contends that the perfected security interest in the inventory and equipment granted by Fowler to the Bank remained in effect when Winslow borrowed $51,500.00 from the Bank. The Bank asserts that Fowler's signature on the face of the note was sufficient even though his signature was omitted from the security agreement on the back of the note. In addition, the Bank argues that the objection by the Barrs concerning the failure of Fowler to sign the security agreement is

waived because the Barrs did not raise the objection at the time of trial.

The Bank argues that TEX.BUS. & COM.CODE ANN. § 9.402(g) (Vernon Supp.1984) provides that a filed financing statement remains effective with respect to collateral transferred by the debtor. The Bank asserts that the Barrs had a duty to inquire as to previously filed liens with regard to the same collateral.

The Bank also contends that its security interest in the collateral obtained through Fowler could not be released without the filing of a termination statement pursuant to TEX.BUS. & COM.CODE ANN. § 9.404 (Vernon 1968). In addition, the Bank asserts that by virtue of Fowler's signed guaranty agreement, Fowler continued to be obligated to the Bank, and the Bank's security interest in the collateral continued.

■ The Barrs' objection that Fowler did not sign the security agreement is waived because the Barrs did not raise the objection at the time of trial. A party cannot raise an issue on appeal which was not raised in the pleadings and which was not before the trial court. *Willis v. Titan Contractors Corp.*, 625 S.W.2d 69, 74 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).

The Bank claims priority by virtue of its financing statements filed in 1975 under the name of Fowler. However, the Bank no longer held a security interest in the collateral once the underlying debt incurred by Fowler had been paid in full from the proceeds of the sale of the collateral. Fowler's note was marked paid by the Bank on December 22, 1977; therefore, the Bank's security interest terminated because of the satisfaction of the debt which it was created to secure. TEX.BUS. & COM.CODE ANN. § 9.306(b) (Vernon Supp.1984) provides:

(b) Except where this chapter otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

It is undisputed that the Bank authorized the transfer of the collateral from Fowler to Winslow, and that Fowler's note was paid. At the time the Barrs filed their financing statement, the Bank's financing statement filed under the name of Fowler was ineffective.

■ We hold that § 9.402(g) of the UCC which provides that a filed financing statement remains effective with respect to collateral transferred by the debtor does not apply when the obligation has been paid and the security interest has terminated.

We hold that Fowler's guaranty of the new loan to Winslow did not cause the security interest created by Fowler to remain effective.

The general rule with regard to priority of perfected security interests is "first in time, first in right." Priority is determined by order of filing if both security interests are perfected by filing. TEX.BUS. & COM.CODE ANN. § 9.312(e)(1) (Vernon Supp.1984).

■ Since the Bank cannot claim a prior perfected security interest from its filed financing statement under the name of Fowler, the Barrs hold a prior perfected security interest because they filed their financing statement before the Bank filed its second financing statement under the name of Winslow.

We hold that the Barrs hold a prior security interest in the inventory, merchandise, equipment, tools, and other materials located at White Oak Lawn and Garden Center as a matter of law. The Barrs' first point of error is sustained.

■ The Barrs' second point of error contends that the trial court erred in holding that White Oak State Bank properly foreclosed on its security interest in the collateral. The Barrs assert that the Bank's foreclosure on the collateral violated TEX.BUS. & COM.CODE ANN. § 9.504 (Vernon Supp.1984) because the Bank was required to send a notification to any other

secured parties who had an interest in the same collateral and who had filed a financing statement with the Secretary of State.

TEX.BUS. & COM.CODE ANN. § 9.504(c) (Vernon Supp.1984), provides in pertinent part as follows:

... [N]otification shall be sent to any other secured party who has a security interest in the same collateral and who has duly filed in the office of the Secretary of State ... a financing statement indexed in the name of the debtor ....

TEX.BUS. & COM.CODE ANN. § 9.507(a) (Vernon Supp.1984), provides:

Secured Party's Liability for Failure to Comply With this Subchapter

(a) If it is established that the secured party is not proceeding in accordance with the provisions of this subchapter disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this subchapter....

The testimony is undisputed that the Bank did not give notice to the Barrs as required by § 9.504(c). Section 9.507(a) provides that any person who is entitled to receive notice and has not received notice has the right to recover for any loss sustained as a result of the wrongful disposition of collateral. The Barrs were entitled to receive notice since they had a security interest in the same collateral, and they had filed a UCC–1 Financing Statement prior to the disposition of the collateral.

■ Under § 9.507(a) the recovery of damages is measured by the economic loss sustained by reason of a failure to comply with the notice requirements. *Food City, Inc. v. Fleming Companies, Inc.*, 590 S.W.2d 754, 761 (Tex.Civ.App.—San Antonio 1979, no writ). The Barrs' second point of error is sustained.

■ The Barrs' third point of error asserts that the trial court erred in holding that there was insufficient evidence to support the submission of the issue on exemplary damages. The Barrs claim that they are entitled to exemplary damages because the Bank acted with a reckless disregard for their rights with regard to the collateral. The Barrs assert that the Bank knew that they should have made a search for other liens, and the Bank did not do so. The Bank did not send the Barrs any notice concerning the foreclosure of the collateral in which the Barrs had a security interest.

The record reveals that the Bank's officer knew that a lien check with the Secretary of State's office should be made prior to the disposition of collateral. The Bank's officer testified that he knew that other secured creditors should be notified prior to the disposition of collateral. The Bank's officer testified that the Bank did not check the lien records prior to the disposition of the collateral in question even though he knew it should be done. The record also reveals that the Barrs' UCC–1 Financing Statement covering the same collateral was on file with the Secretary of State's office at the time of the disposition of the collateral by the Bank.

We hold that the evidence is sufficient to raise the issue that the Bank acted with reckless disregard for the rights of the other secured creditor, the Barrs. The Barrs are entitled to an issue or a finding on exemplary damages. The Barrs' third point of error is sustained. We do not reach the fourth and fifth points of error.

The record reflects that the Bank received approximately $30,000 for the sale of the inventory; therefore, the judgment is reversed and judgment is here rendered for the Barrs against the White Oak State Bank for $25,217.94, plus interest at the rate of 9% per annum from August 3, 1982; the issue of exemplary damages is severed and remanded to the trial court.