AETNA CASUALTY & SURETY
COMPANY, Appellant,

v.

CHAPEL HILL INDEPENDENT
SCHOOL DISTRICT,
Appellee.

No. 12–91–00073–CV.

Court of Appeals of Texas,
Tyler.

Aug. 10, 1993.

Murphy J. Foster, III, Breazeale, Sachse & Wilson, Baton Rouge, LA, B. Lance Vincent, Tyler, for appellant.

Jack Jackson, Tyler, for appellee.

HOLCOMB, Justice.

This is an appeal from a judgment in a construction case, after a trial to the court.

Aetna Casualty & Surety Co. (hereafter "Aetna"), the former surety, indemnitee, and assignee of claims of Utley–James, Inc. (hereafter "Utley–James"), the general contractor, brought suit against Chapel Hill Independent School District (hereafter "Chapel Hill") to recover for losses from delays caused by Chapel Hill in the amount of $384,708, damages in the amount of $65,688 in inflation costs caused by Chapel Hill not releasing certain property in a timely manner, $79,180 in unpaid Change Order Requests, the balance due under the contract in the amount of $87,649, and attorney's fees.

Chapel Hill denied that it owed anything, except $25,000 retained, as required by the contract, until the contractor provided proof that all subcontractors' debts had been paid and no liens remained on the property. In its amended answer, Chapel Hill countered that it had a claim against Utley–James for $57,000, which agents of Utley–James and Aetna had admitted it owed but would not amend its pleadings to reflect. Therefore, Chapel Hill contended it should be awarded attorney's fees for having to assert the counter-claim and defend against the allegations.

The trial court denied Aetna all relief except the $25,000, and granted Chapel Hill its counter-claim and requested attorney's fees of $101,565. We will affirm the judgment of the trial court.

Utley–James, in late 1983, was the low bidder for a contract for construction of new buildings and additions to the Chapel Hill School complex. The contract between Utley–James and Chapel Hill was for the building of a new vocational building, a new Middle School, a new High School, and the re-

moval of an old elementary school and construction of a parking lot on the site. The High School would take the longest to build, and according to Utley–James' bid, it would take 355 days. Work began on December 19, 1983, with a completion date of December 10, 1984. The demolition of the old elementary school was not to begin until after the 1984–85 school year; Chapel Hill would turn the building over to Utley–James by June 5, 1985, with the parking lot to be completed by August 1, 1985, for the beginning of the next school year. The initial proposal envisioned Utley–James leaving the construction site in December 1984 and returning to raze the elementary school and construct the parking lot after June 1985. However, Utley–James never left the building site, eventually turning the final buildings over to Chapel Hill on October 15, 1985, 665 days after beginning the project.

There were many changes in the specifications and designs, and Utley–James did experience many delays in the completion of this project. Chapel Hill paid for many of those changes which are not a part of this suit. As the time approached to demolish the elementary school, Chapel Hill sought assurances that the high school itself would be available for the 1985–86 school year and the class room space represented by the elementary school would not be needed and the building could be turned over to the contractor. After this construction was complete, and for reasons not relevant to this case, Utley–James went out of business and Aetna succeeded to its interests.

■ Aetna brings four points of error: (1) that it should have been paid for changes in the scope of the work, (2) that it suffered damages caused by delays created by Chapel Hill, (3) that Chapel Hill should not have been awarded attorney's fees, and (4) that it, Aetna, should have been awarded its attorney's fees. In its summary, Aetna prays this Court grant it all the relief sought in the trial court. The points of error do not follow the usual form seen in appeals in this state, but we will liberally construe them in light of the argument and prayer.[1] TEX.R.APP.P. 74(d) and (p); *Fambrough v. Wagley,* 140 Tex. 577, 169 S.W.2d 478 (1943). Because Aetna argues that Appellee provided no evidence to the contrary or had no right to recover, and because Aetna asks this Court to render judgment for Aetna, we will construe the points of error as asserting that Aetna proved its case as a matter of law. *See Chapa v. Herbster,* 653 S.W.2d 594 (Tex. App.—Tyler 1983, no writ).

■ In point of error one, Appellant argues that the contractor was not paid for work performed, reflected by seven Change Orders. Appellant argues that there was "substantial evidence" to prove the claims and "no evidence" to rebut the claims.

On the first of these, Change Order # 24, Appellant sought to recover for added roof curb frames. Appellant's witnesses testified that a roofing subcontractor noted that the drawings it had did not show the proper amount of steel frames to support the "mechanical units" and that the subcontractor installed the additional material. Appellant introduced two exhibits, one asked for a Betterment Change Order be approved for $6520 [2] and the other was the "Log of Extra Work." Neither of these exhibits indicate that the architect agreed to accept responsibility for any change; in fact, the log has a notation that # 24 was "not covered or approved as per SHWC [the architect]." Appellee introduced a letter from the architect to Utley–James which specifically rejected the claim as the contractor's responsibility, claiming the issue was resolved a year before, and further that Utley–James had never provided the proper back-up data to even consider the request. Thus, there is some evidence to support the trial court's Findings of Fact 58 and 59 that Aetna had not proved the change order proposal reflected work done in addition to the contract, how much it

---

1. Aetna chose to use an attorney from Louisiana to assert their claims, and he proceeded *pro hac vice.*

2. The request was based on a subcontractor's estimate:

| | | |
|---|---|---|
| Materials | 3516 lbs | $3235.– |
| Labor | 3516 × .65 = | 2285.– |
| Total | | $6520.– (sic) |

would have been, or that it was ever authorized as called for in the contract.

The second, Change Order # 34, is for additional duct work. A subcontractor, on its own form, gave Utley–James a change order to "modify existing ductwork in Middle School not shown on drawings," which cost $468.75. Appellant points to this evidence and the Log of Extra Work (Plaintiff's Exhibit 87) as proof as a matter of law that the work was not covered by the contract, that an additional $539 (the amount of the claim) was due Utley–James, and that the change order had been approved as required by the contract. Appellee presented evidence that it was never clear what was being claimed and that there was no supporting documentation for the claim. There was evidence which raised a fact issue so that Appellant did not prove the issue as a matter of law.

The third, Change Order # 58, was for a catch basin that was not in the plans. Appellant points this Court to Plaintiff's Exhibit 87 to show the work was done and approved by Chapel Hill. While the Log of Extra Work, Exhibit 87, is a management tool used by Utley–James for its own purposes, even it shows that the issue was still to be negotiated. This is not proof that the work was done and approved as a matter of law.

The fourth, Change Order # 80, is a claim for the additional cost to insulate light fixtures to meet fire safety codes. The insulation was shown on the plans but was not clearly written out in the specifications. Appellant produced evidence that this was not a usual way to prepare specifications and that most contractors would have missed the requirement for this detail. Appellee showed that the requirement was available to Utley–James if they had been diligent in reading the plans and specifications. Further, Appellee showed, by Appellant's own witness, that the type of fire safety insulation was so common that it should have been assumed by the contractor. Appellant did not prove its right to recover as a matter of law.

The fifth, Change Order # 83, was for additional curbing and asphalt paving. Appellant claimed that it had performed part of the work, $4,869.00 of the $11,115.00 claimed in pleadings. Appellant's own evidence showed that another contractor had done the job and that no change order had been presented as the contract required. Appellant did not conclusively prove this claim.

The sixth, Change Order # 107, was for sheetrock that was replaced because of water damage. Appellee produced evidence that the work was unrelated to the contract, that it had not been approved as required, and that Utley–James was notified twice that the claim would not be paid because the damage was a result of the contractor not "drying in" and securing the building. There is evidence that the issue was in dispute and Appellant did not prove the claim as a matter of law.

The seventh, Change Order # 122, was for replacing conduit damaged by "other trades not associated with Utley–James." The sole evidence of this claim is the deposition testimony of a Mr. Ethridge who retired from Utley–James in January 1986. He said the conduit had to be changed because the original would have been above ground. This was because the designed grade had to be changed to allow a swale to drain, which resulted in leaving the electric line above the new grade. Ethridge said that "Tyler Power and Light" required that the conduit be changed and:

A: the power and light is the one that changed it, but then who—we give them the order—we give the order to change it. And the power and light, the best I know, is the one that fouled up, but they was charged that—I think this is when they charged us for making the change.

Q: Okay. The—

A: This money went to them. It didn't go to us. It was for this. I remember that about that.

Q: You said the grade was originally specified to be one thing and then respecified to be a different level?

A: Yeah, change of grade. I believe you'll find in the documents probably that the architect had to change his grade there to get the water out from behind the—behind the parking lot. I believe you'll find that's what it is.

Appellee presented evidence that there was no information on change orders in the files or anything to show the work was approved. Again Appellant did not prove the issue as a matter of law.

■ In urging each of these claims, Appellant argues that the work was performed and Chapel Hill enjoys the benefit of the work. As we have stated, Appellant has not proven that the work was done and that it was in addition to what was required by the contract. Appellee relied heavily on the fact that none of the claims had been submitted for approval as the contract required. Appellant argues that this breach of contract should not bar their recovery since Chapel Hill has the enjoyment of the use of these changes and the contractor has not been paid. We believe Appellant is asking for recovery of damages in quantum meruit. Appellant sued on the contract for contract damages and a new theory of recovery, quantum meruit, cannot be urged for the first time on appeal. *Barr v. White Oak State Bank*, 677 S.W.2d 707, 710 (Tex.App.—Tyler 1984, writ ref'd n.r.e.).

We also find that each of the trial court's Findings of Fact is supported by sufficient controverting evidence and is not against the great weight and preponderance of the evidence. Appellant's first point of error is overruled.

■ By its second point of error, Appellant claims the "trial court erred in failing to grant plaintiff damages for delay suffered by the contractor during the project at the hands of the owner" Chapel Hill. In a rambling, obtuse, even labyrinthine discussion,[3] Appellant asks this Court to allow it to recover damages (1) for delay days which the architect approved, but which showed $0.00 additional compensation, (2) for additional costs to maintain the site office, and (3) for home office overhead. To recover for compensable delays caused by the owner, the plaintiff must establish:

(1) the work was delayed or hindered;

(2) plaintiff suffered damages because of the delay; and

(3) the owner was responsible for the act or omission which caused the delay.

*City of Houston v. R.F. Ball Constr. Co., Inc.*, 570 S.W.2d 75, 77 (Tex.Civ.App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.).

■ Appellant does not directly say what evidence the trial court could have examined to determine that Appellant had proved its case and does not direct this Court to the findings of fact it wishes to challenge. Appellant clearly demonstrates that there were many delays in this project. However, Appellant has not shown how the extra costs it claims are an increase in the amount that it budgeted to spend. Further, Appellant has not shown that the owner was at fault for the delays. In fact, Appellant's own evidence can be construed to show that Utley–James or its subcontractors were major contributing causes to all the damages Appellant now seeks to recover. Specifically, the trial court found that Utley–James' job superintendent was replaced after four months on the project because it was already four weeks behind schedule. Furthermore, Appellant's evidence showed that after seven months the project had been delayed over seven weeks.

Appellant's arguments center on three proposed change orders. These change orders are prepared on forms which bear the logo and letterhead of the architect; they are all dated November 6, 1985. One of the proposed change orders has a signature of the architect, but there are no other signatures, contractor or owner, on any of these change orders. Chapel Hill argued that these were prepared after the contract was complete in October, 1985, and were an attempt to have a record of all issues in dispute at various post-construction meetings. Appellant attributes great significance to the fact that the change orders were prepared by the architect, which Appellant alleges amounts to approval of the content. The only change order that carries the architect's signature is one that recommends no additional money be paid for the delays, but does recommend an additional

---

**3.** Point of error two is covered in thirty-eight pages and makes reference to four appendices, one of which is itself twenty-four pages long.

360 days to complete the project by March 12, 1986. The second of the disputed change orders is for the delay in releasing the elementary school for demolition. This change order shows $123,188.00 for re-mobilization, general conditions costs and cost for material price increases. Utley–James' bid reflected that it expected to be finished in December, 1984, and return to the site in June, 1985, to complete the parking area. The bid reflected the cost of leaving and returning and the consequential costs of this "remobilization." When the case came on for trial, the plaintiff's claim had risen to include $154,527.00, which reflected the value of the home office overhead that would have been added to the bid if Utley–James had planned to stay on the site for an additional 296 days. However, Appellant directs this Court to no evidence in the record to show how this claim was proven to the trial court. Appellant claims that the delay in the demolition of the elementary school caused damages of $65,688.00 in increased concrete costs. This cost increase, by Appellant's own evidence, is because the supplier that made the initial low bid could not supply Utley–James' needs. Further, Utley–James' evidence shows that, beginning in November, 1984, Utley–James began paying $6.52 more per cubic yard of concrete. The school was never to be released for demolition until June 1985. Appellant does not direct this Court to where in the record Appellant showed that this cost increase in 1984 was attributable to Chapel Hill not releasing the school until 1985. There is nothing to overcome the findings by the trial court that the plaintiff failed to prove (1) that the home office overhead was attributable to the Chapel Hill project, (2) that any overhead attributable to the project was chargeable to Chapel Hill, and (3) that any claim, pursuant to the contract, was presented before the suit was filed. Point of error two is overruled.

■ Appellant's third point of error complains that the trial court should not have granted Chapel Hill recovery of its attorney's fees. Appellant had claimed that Chapel Hill had retained about $82,000 that should have been paid under the contract. Chapel Hill counterclaimed that Utley–James had used $57,000 in utilities at Chapel Hill's expense and had not paid for them as required under the contract. Appellant argues that there was no need to prosecute the counterclaim in this suit, because Appellant had admitted that it owed Appellee for its counterclaim in October, 1989. While Appellant's agent did admit in deposition testimony that the counterclaim was valid, when the case came on for trial in May, 1990, the claim for the full $82,000 was still part of the pleadings that had been amended in April, 1990. Appellant argues that since it admitted it owed the amount claimed by Appellee, the attorney's fees were not attributable to the counterclaim. Appellant argues that the admission amounts to a tender of the amount owed thus defeating the claim for attorney's fees under TEXAS CIVIL PRACTICE & REMEDIES CODE sec. 38.002.

■ Appellant's argument ignores two points; first, Appellee had every reason to prosecute the counterclaim as long as Appellant, through its amended pleadings, maintained the cause of action, and second, the trial court found that $101,000 in attorney's fees was reasonable for prosecuting the counterclaim. The evidence of what Appellee's attorneys claimed was contained in two exhibits, neither of these exhibits is included in the record on appeal. While the testimony of the experts could be construed to infer that the claimed fees were for the entire case, they can also be construed to be for the prosecution of the counterclaim. When the testimony is combined with the presumption that the findings of the trial court are supported by the missing evidence, the judgment of the trial court will not be disturbed. *Schafer v. Conner,* 805 S.W.2d 554 (Tex. App.—Beaumont), *writ denied per curiam,* 813 S.W.2d 154 (Tex.1991). Further, Appellant does not attack the trial court's finding of fact, only that the judgment was erroneous. A judgment supported by an unchallenged finding of fact will not be disturbed by an appellate court. *Wade v. Anderson,* 602 S.W.2d 347 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.).

Appellant has not directed this Court to error that requires reversal. Therefore, point of error three is overruled.

673

Appellant's fourth point of error is that "[t]he trial court erred in refusing to award attorney's fees to plaintiff incurred in the prosecution and partial recovery of its claim against defendant." The only recovery Appellant received was the $25,000 that Chapel Hill always acknowledged it owed, but was required to retain until Appellant complied with the contract. Chapel Hill's original answer, and each amendment, stated that it owed Appellant $25,000 and that it was ready and willing to pay if it received the contractually required assurances that all subcontractors had been paid and the property could not be reached to satisfy any liens. The trial court found that Appellant had not, prior to trial, complied with the conditions precedent to the release of the $25,000. Appellant "recovered" what Chapel Hill said it owed to them. Chapel Hill invited Appellant to demonstrate that all conditions precedent had been met to the release of the funds. Appellant failed to produce the releases until it was in court. At trial, Appellant put itself to the burden of having to prove it had paid all subcontractors and show that there was no reason for Chapel Hill to retain the funds. On these facts we do not consider that Appellant prevailed in its case. Further, Appellant did not supplement discovery and failed to list the names of experts and attorneys that would prove Appellant's reasonable attorney's fees. The trial court properly excluded any evidence as to either the amount or reasonableness of Appellant's fees. Thus, there was insufficient evidence to show what Appellant's reasonable attorney's fees may have been. The trial court did not err in failing to award Appellant its attorney's fees. Point of error four is overruled.

The judgment of the trial court is **affirmed.**