**Reverse in Part, Affirm in Part, and Remand Memorandum Opinion filed April 21, 2026**



In The

# Fifteenth Court of Appeals

---

### NO. 15-25-00012-CV

---

**STATE OF TEXAS, ACTING BY AND THROUGH THE TEXAS FACILITIES COMMISSION, FOR AND ON BEHALF OF THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION; THE TEXAS FACILITIES COMMISSION; MIKE NOVAK, IN HIS OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR OF THE TEXAS FACILITIES COMMISSION; THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION; AND ROLLAND NILES IN HIS OFFICIAL CAPACITY AS DEPUTY EXECUTIVE COMMISSIONER FOR THE SYSTEM SUPPORT SERVICES DIVISION OF THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION, Appellants**

**V.**

**8317 CROSS PARK, LLC, Appellee**

---

**On Appeal from the 98th District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-23-006445**

---

### MEMORANDUM OPINION

Appellant the State of Texas, acting through appellant Texas Facilities

Commission ("TFC"), sought to terminate its lease for office space with appellee 8317 Cross Park, LLC ("Cross Park"). The office space was being occupied by appellant Health and Human Services Commission ("HHSC").

Cross Park sued TFC, HHSC, the State, Mike Novak, in his official capacity as Executive Director of TFC, Rolland Niles, in his official capacity as Deputy Executive Commissioner for the System Support Services division of HHSC (collectively, "Appellants"), and others contesting the termination of the lease. Appellants and others filed a plea to the jurisdiction, which the trial court granted in part and denied in part. The denial related to all of Cross Park's claims against Appellants. Appellants appealed to this Court. The issues in this case are substantively identical to the issues disposed of in our recently issued opinion, *State v. Broadmoor Austin Associates*. No. 15-25-00013-CV, 2026 WL 668284, at *1 (Tex. App. [15th Dist.] Mar. 10, 2026, no pet. h.) (mem. op.). In *Broadmoor*, we concluded that all claims against TFC, HHSC, the State, and Niles were barred by sovereign immunity and that there was a fact question as to whether claims against Novak were barred by immunity. We accordingly reversed in part and affirmed in part the trial court's order in that case. We reach the same result here.

## BACKGROUND

The State of Texas, operating through TFC's predecessor, entered into a five-year lease agreement with private landlord Dupont Cross Park Drive Limited Partnership[1] for office space to be occupied by HHSC, starting September 1, 2002. The end date of the lease was later extended to August 31, 2028. The lease agreement stipulates the lease "is made contingent . . . upon the availability of state funds appropriated by the Legislature[] to cover the full term and cost of the lease." In the

---

[1] The parties do not dispute Cross Park is the successor in interest to Dupont and that Cross Park is entitled to enforce the lease.

2

event that "state appropriated funds are unavailable," TFC, "upon written notice to the Lessor, either may terminate [the] lease, or adjust it in accordance with the provisions of this lease" if it cannot find another state agency to at least partially fill the office space. The lease also states that if the State "shall be in default in the payment of rentals" and fails to timely cure, Cross Park "shall have the remedies now or hereafter provided by law for recovery of rent, repossession of premises, and damages occasioned by such default."

In 2022, HHSC submitted its Legislative Appropriations Request for the 2024–2025 biennium, requesting $105,369,343 and $105,245,466 to fund its rental payments for fiscal years 2024 and 2025 respectively. HHSC also requested additional funds for an anticipated increase in lease costs. The Legislature in the State's General Appropriations Act (the "Act") decided to appropriate $118,826,243 for fiscal year 2024 and $119,751,160 for fiscal year 2025, explaining that $12,275,361 had been appropriated for each year for cost increases for state leases. The Act was signed into law on June 18, 2023.

On May 30, 2023, TFC Executive Director Novak sent a notice of termination of lease to Cross Park stating that HHSC directed TFC "to terminate the . . . [l]ease due to the non-availability of money . . . ." The notice further informed Cross Park that HHSC "has directed that rent will not be certified for the biennium beginning September 1, 2023 . . . ." Days later TFC sent a letter to HHSC requesting HHSC to certify the funding available for all its leases in the 2024–2025 biennium, as required by law. HHSC Deputy Executive Commissioner Niles responded to the letter certifying the availability of funds—$93,767,377.36 annually—for all except five leases, one of which was the Cross Park lease.

Cross Park sued in Travis County. In its live petition, Cross Park brought claims against the State, TFC, and HHSC alleging that they breached the lease

agreement by sending a false and improper lease termination notice and failing to pay rent due under the lease. Cross Park also brought ultra vires claims against Niles, Novak, Cecile Erwin Young, in her official capacity as Executive Commissioner of HHSC, and Glenn Hegar, in his official capacity as Comptroller of Public Accounts. Regarding its claims against Niles and Novak, Cross Park alleged that Niles acted ultra vires when he failed to certify that HHSC did in fact have funds available to fund the lease and that Novak acted ultra vires when he sent the termination notice to Cross Park when such funds were available. Finally, Cross Park sought a declaration against all defendants that "the 88th Texas Legislature did in fact appropriate funds to pay rent to [Cross Park] in satisfaction of the State Lessee's obligations under the [Cross Park] Lease for the 2024 and 2025 fiscal years."

Defendants filed a plea to the jurisdiction, which they amended, arguing that sovereign immunity barred Cross Park's claims. The trial court granted in part defendants' plea and denied it in part. The court granted the plea as to the claims against Young and Hegar but denied the plea as to all claims relating to Appellants. Appellants then appealed to this Court.

## STANDARD OF REVIEW

Sovereign immunity implicates a trial court's jurisdiction and is properly raised in a plea to the jurisdiction. *Christ v. Tex. Dep't of Transp.*, 664 S.W.3d 82, 86 (Tex. 2023). A plea questioning the trial court's jurisdiction raises a question of law that is reviewed de novo. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007).

When considering a plea to the jurisdiction, our analysis begins with the live pleadings. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). We first determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In doing so, we construe the pleadings liberally in favor of the

4

plaintiff, and unless challenged with evidence, we accept all allegations as true. *Id.* at 226–27.

The plea must be granted if the plaintiff's pleadings affirmatively negate the existence of jurisdiction or if the defendant presents undisputed evidence that negates the existence of the court's jurisdiction. *Heckman*, 369 S.W.3d at 150.

## ANALYSIS

Appellants challenge the trial court's order denying their plea, arguing that (1) Cross Park's breach of lease claim against the State of Texas, TFC, and HHSC is barred by sovereign immunity; (2) Cross Park's ultra vires claims against Niles and Novak are barred by immunity; and (3) Cross Park's request for declaratory relief that the Texas Legislature appropriated sufficient funds for Appellants to pay rent to Cross Park is barred by immunity. These issues have all been raised and addressed in our recently issued *Broadmoor* opinion.

## I. Cross Park's Breach of Lease Claim Is Barred by Sovereign Immunity.

In their first issue, Appellants argue that Cross Park's breach of lease claim against the State, TFC, and HHSC (collectively, "State Entities") is barred by immunity and that Chapter 114 of the Texas Civil Practice and Remedies Code's immunity waiver provision does not apply. Appellants reason that this provision only applies to state agencies, and the State—the only entity that is a party to the lease—is not a state agency as defined under Chapter 114. Appellants also argue that Chapter 114's waiver, which covers contracts for construction, architectural, and engineering services, does not apply to lease agreements. Appellants further argue that Cross Park only alleges that the rental provision of the lease was violated, which does not pertain to construction services.

Cross Park responds that the State Entities are all state agencies that entered

5

into the lease, the lease is also a contract for construction services, and that Cross Park alleged the State Entities breached the termination and rental payment provisions of the lease. Following *Broadmoor*, we hold that Chapter 114's immunity waiver does not apply to the State Entities because the State is the only entity that is a party to the lease and the State is not a state agency as defined by Chapter 114. *Broadmoor*, 2026 WL 668284, at \*3. Because TFC and HHSC are not parties to the lease, Chapter 114 does not apply to them. *Id.*

> Chapter 114's waiver provision states:
>
> A state agency that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this chapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of an express provision of the contract, subject to the terms and conditions of this chapter.

Tex. Civ. Prac. & Rem. Code § 114.003. A "state agency" under Chapter 114 is defined as "an agency, department, commission, bureau, board, office, council, court, or other entity that is in any branch of state government and that is created by the constitution or a statute of this state . . . ." *Id.* § 114.001(3). The circumstances here are substantively identical to *Broadmoor*. In *Broadmoor*, the issue was whether the State Entities were parties to a lease with private landlord Broadmoor Austin Associates ("Broadmoor"). *Broadmoor*, 2026 WL 668284, at \*3. The lease agreement in that case, the Broadmoor Lease, stated "[t]his Agreement is made and entered into . . . by and between LESSOR, **BROADMOOR** . . . and LESSEE, STATE OF TEXAS, acting by and through the Texas Facilities Commission (TFC)." *Id.* Similarly, the issue before us is whether State Entities are parties to a lease, the Cross Park lease, with private landlord Cross Park. The Cross Park lease states "[t]his Agreement is made and entered into . . . by and between LESSOR, [Cross Park's predecessor in interest] and LESSEE, STATE OF TEXAS." We

6

concluded in *Broadmoor* that "[t]he terms of the [Broadmoor] lease and Section 2167.055 [of the Texas Government Code] are clear that it is the State which entered into the lease and that TFC is acting on the State's behalf as its representative." *Id.* We then held that "Chapter 114 does not apply to TFC and HHSC because neither 'enter[ed] into a contract' with Broadmoor." *Id.* (alteration in original) (quoting Tex. Civ. Prac. & Rem. Code § 114.003). Similarly here, we hold that only the State entered the Cross Park lease and that Chapter 114 does not apply to TFC and HHSC because they did not enter into the lease.

We next considered in *Broadmoor* whether the State was a state agency as defined by Chapter 114. *Id.* We held that it was not because the State is distinct from its agencies and so Chapter 114's waiver did not apply. *Id.* at *3–4. Because that holding controls here also, Chapter 114's waiver does not apply to the State as a party to the Cross Park lease.

We sustain Appellants' first issue.[2]

## II.     Cross Park's Ultra Vires Claims Against Niles and Novak.

### A. Cross Park Failed to Plead a Viable Ultra Vires Claim Against Niles.

In their third issue, Appellants argue that Cross Park has not sufficiently pled that Deputy Executive Commissioner Rolland Niles of HHSC acted ultra vires by allegedly failing to certify to TFC that HHSC had funds available to pay rent for the Cross Park lease. Appellants contend that Niles had discretion to determine whether funds were available for the lease and that Cross Park's ultra vires claim is barred

---

[2] Because TFC and HHSC are not parties to the lease and the State is not subject to the Chapter 114 waiver, we do not reach Cross Park's arguments about whether the Cross Park lease is the type of contract subject to Chapter 114 and whether the State Entities breached any of the lease provisions.

for seeking retrospective relief.

Cross Park responds that Niles did not have discretion in determining the availability of funds because such a determination is ministerial, and that the relief Cross Park seeks is prospective and not retrospective. Cross Park also responds that Niles never certified that funds were unavailable. Cross Park further responds that Niles violated TFC regulations and the terms of the Cross Park lease by not following proper lease termination procedures. Finally, Cross Park responds that funds appropriated for the lease were unlawfully allocated to purposes other than rent.

To succeed on an ultra vires claim, a party must "allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *City of Hous. v. Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 576 (Tex. 2018) (quoting *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009)). "'Ministerial acts' are those 'where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment.'" *Id.* (quoting *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015)). "Conversely, 'discretionary acts' are those that 'require the exercise of judgment and personal deliberation.'" *Id.* (quoting *Emmett*, 459 S.W.3d at 587).

We agree with Appellants that Niles had discretion to determine the availability of funds. HHSC, as a state agency occupying office space under the lease, was required under Section 2167.101 of the Texas Government Code to "certify to the commission, at least 60 days before the beginning of each fiscal biennium during the lease term, that money is *available to pay* for the lease until the

end of the next fiscal biennium."[3] Tex. Gov't Code § 2167.101 (emphasis added). The parties do not dispute Niles certified the availability of funds for all but five leases, one of which was the Cross Park lease.[4] The crux of the parties' dispute is whether Niles's decision to certify the availability of money for the Cross Park lease was discretionary or ministerial. We answered this question in *Broadmoor*, which also involved a decision by Niles to certify the availability of money for a lease. We held there that "Section 2167.101 does not prescribe 'with such precision and certainty as to leave nothing to the exercise of discretion or judgment' what amounts to there being available funds to pay for the lease." *Broadmoor*, 2026 WL 668284, at *7 (quoting *City of Hous.*, 549 S.W.3d at 576). We further held Section 2167.101 "provides no criteria for Niles to use in determining what makes funds available to pay for lease rentals. This lack of 'precision and certainty' renders this determination a matter of discretion." *Id.*

We noted that Broadmoor's suggested method of determining the availability of funds by merely looking at the differential between the total amount the Legislature appropriated for rent and the amount Niles certified to TFC is nowhere stated in the law and is not the only method one could use to determine the availability of funds. *Id.* at *7–8. We explained that the amounts in rental payments made for HHSC's leases during the biennium could change based upon factors like the Consumer Price Index (CPI) escalation clauses in the Broadmoor lease and other leases[5] requiring monthly rents to be adjusted to reflect changes in the CPI from time to time, along with other lease support costs and the future need for newer facility

---

[3]As we held in *Broadmoor*, there is no requirement in Section 2167.101 requiring Niles to certify the *unavailability* of funds for a lease. *Broadmoor*, 2026 WL 668284, at *7 n.5.

[4] The Broadmoor lease was also one of the five leases listed.

[5] The parties did not dispute in *Broadmoor*, and do not dispute here, that other HHSC leases have CPI escalation clauses. *Broadmoor*, 2026 WL 668284, at *8.

leases. *Id.* at \*8. For the same reasons[6], we also hold here that Niles' determination of the availability of funds is discretionary and not purely ministerial.[7]

Cross Park raises two objections. Cross Park objects that Niles (1) failed to follow the termination procedures as delineated in TFC regulations and the Cross Park lease and (2) unlawfully diverted money appropriated for rent to the lease to other unspecified purposes. Cross Park did not raise this first objection in its live pleading, so we do not consider it here. *Stafford v. Stafford*, 726 S.W.2d 14, 15 (Tex. 1987) ("Unless fundamental error is involved, a party cannot raise an issue on appeal if the issue was not raised in the party's pleadings or during trial."); *Barr v. White Oak State Bank*, 677 S.W.2d 707, 710 (Tex. App.—Tyler 1984, writ ref'd n.r.e.) ("A party cannot raise an issue on appeal which was not raised in the pleadings and which was not before the trial court."). Moreover, where a plea to the jurisdiction "challenges the pleadings" as is the case here, we must "determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause," construing "the pleadings liberally in favor of the plaintiffs . . . ." *Miranda*, 133 S.W.3d at 226. Cross Park in its pleadings alleged neither facts nor legal claims asserting that Niles violated any termination procedures in the TFC regulations or the Cross Park lease. Cross Park only alleged that Niles acted ultra vires by "fail[ing] to certify to the Texas Facilities Commission that funds were in fact available to fund

---

[6] We are aware that the most recent version of Cross Park's lease does not contain a CPI escalation clause, unlike the lease in *Broadmoor*, but our holding in *Broadmoor* took into consideration the fact that these clauses existed in other leases as well. *Broadmoor*, 2026 WL 668284, at \*8. As we noted there, the Legislature's "appropriation does not include a line-by-line appropriation for each lease on which HHSC occupies space, only detailing the total rent appropriated for the 2024 and 2025 fiscal years." *Id.* at \*7. The fact that there is no "line-by-line appropriation" for each lease means extra rental costs due to CPI escalations in other leases could affect the availability of money for the Cross Park lease.

[7] As this resolution disposes of Cross Park's claim against Niles, we do not reach the issue of whether the relief Cross Park seeks is impermissibly retrospective.

the [Cross Park] Lease."

As for its allegation that Niles diverted appropriated rent funds to other purposes, Cross Park cites as its source a statement in Appellants' plea to the jurisdiction, which states in full: "Given that the decision to terminate the lease took place over a year ago—those funds have already been allocated for different purposes." This says nothing as to whether those "different purposes" are purposes other than rental payments. Moreover, as with its first objection, Cross Park did not allege in its pleadings that Niles or anyone else allocated rent-appropriated funds for different purposes. This failure to "allege[] facts that affirmatively demonstrate the court's jurisdiction" consequently disposes of this objection. *Miranda*, 133 S.W.3d at 226–27. Further, to the extent Cross Park seeks to recover such funds already diverted for other purposes, such recovery is barred for pursuing impermissible retrospective relief. For ultra vires claims, "claimants are only entitled to prospective relief," which is "measured from the date of injunction." *City of Hous.*, 549 S.W.3d at 576. "Retrospective relief, however, remains barred by immunity absent a legislative waiver." *Hartzell v. S.O.*, 672 S.W.3d 304, 311 (Tex. 2023).

Accordingly, Cross Park fails to sufficiently allege an ultra vires claim against Niles.

### B. Cross Park Sufficiently Alleges an Ultra Vires Claim Against Novak.

Appellants in their third issue also argue that Cross Park has not sufficiently pled that Executive Director Mike Novak of TFC acted ultra vires when he sent Broadmoor the lease termination notice. Appellants contend that Novak was acting within his discretion to send the termination notice based on Niles' determination that funds were not available to fund the lease. Appellants also argue that Cross Park's ultra vires claim is barred for seeking impermissible retrospective relief.

11

Cross Park responds that Novak lacked authority to send the termination notice because (1) funds were available and (2) Novak's notice violated TFC regulations. Cross Park further responds that the relief it requests is prospective. We hold that Cross Park sufficiently alleges Novak violated TFC regulations when he issued the termination notice.

Cross Park alleges that two TFC regulations were violated. One of the regulations states that "[u]pon furnishing a written determination that the governmental agency occupies idle facilities or has idle capacity based upon [specified] factors . . . to the Commission, a lease *may be considered for cancellation* by the Commission upon request by a governmental agency."[8] 1 Tex. Admin. Code § 115.21(b) (emphasis added). The other regulation provides that a governmental agency such as HHSC in requesting "to cancel a lease due to lack of funding" must "provide evidence of notification to the Office of the Governor *in order for such a request to be considered* for action by the Commission." *Id.* § 115.22(b) (emphasis added).

Our analysis in *Broadmoor*, which also involved whether Novak violated TFC regulations in issuing a termination notice in the same manner as asserted here, disposes of this issue. As we reasoned there, before "Novak could consider terminating the lease with Broadmoor, these regulations thus required Novak to (1) receive a written determination from HHSC regarding whether it occupied idle facilities or has idle capacity based upon specified factors and (2) receive evidence from HHSC that it notified the Office of the Governor." *Broadmoor*, 2026 WL 668284, at *9. As in *Broadmoor*, it is undisputed that Novak neither received a written determination nor evidence of notice to the Governor's Office before he sent

---

[8] "'Governmental agency' means a board, commission, department, office, or other agency in the executive branch of state government . . . ." 1 Tex. Admin. Code § 115.20(4).

the termination notice.[9] *Id.* Appellants' objection that the regulations do not apply because they were enacted after the lease was entered is unavailing because "[t]he date that controls is not the date the lease was executed but rather the date of the alleged violative conduct, Novak sending the notice of termination to [Cross Park]." *Id.* The parties do not dispute that the notice was sent after the regulations at issue were promulgated in 2016. *See* 1 Tex. Admin. Code §§ 115.21–.22.

Appellants also object that Cross Park's ultra vires claim against Novak is barred for seeking retrospective relief. Cross Park in its live petition seeks identical relief against Novak that Broadmoor sought in its petition:

- an injunction mandating that Defendant Mike Novak, in his Official Capacity as Executive Director of the Texas Facilities Commission: (i) withdraw the Notice of Termination of Lease, and (ii) cause the Texas Comptroller to recommence rent payments as they come due under the terms of the Lease;

- an injunction mandating that Defendant Mike Novak, in his Official Capacity as Executive Director of the Texas Facilities Commission, comply with 1 Tex. Admin. Code § 115.22 in connection with any attempted termination of the Plaintiff Lease;

*See Broadmoor*, 2026 WL 668284, at *9–10. Consequently, we reach the same result. Cross Park's request to "recommence rent payments as they come due" is prospective—it seeks rental payments only going forward—and does not seek impermissible past rental payments.[10] *Id.* at *10 (citing *Heinrich*, 284 S.W.3d at 368–69 ("We conclude that while governmental immunity generally bars suits for retrospective monetary relief, it does not preclude prospective injunctive remedies

---

[9] Cross Park alleges other grounds on which Section 115.22, but we need not reach these grounds because we hold that the trial court had jurisdiction over the ultra vires claim.

[10] We note Cross Park in its briefing before this Court additionally seeks past rental payments. Such payments would constitute impermissible retrospective monetary relief and so are barred. *City of Hous.*, 549 S.W.3d at 576 ("[R]etrospective monetary claims are generally barred.").

13

. . . .")). And Cross Park's "request for Novak to withdraw the notice of termination is also in line with court precedent compelling government officials to reverse past decisions as a form of corrective relief." *Id.* at *10 (citing cases).

In addition to arguing that Novak's premature termination notice violated TFC regulations, Cross Park also maintains that sending the notice violated the termination provision of the Cross Park lease. Specifically, Cross Park contends that the lease required Novak to state in his notice that TFC could not find a replacement tenant. We do not reach this issue today. As we stated in *Broadmoor*, "[i]f Novak violated the lease termination procedures in the TFC regulations, the appropriate remedy is to require [the executive director] to follow the TFC regulations." *Id.* at *11. It is possible that TFC may decide not to terminate the lease if those procedures are followed. *See, e.g.*, 1 Tex. Admin. Code § 115.21 (requiring an agency seeking to terminate a lease due to lack of funding to send TFC a determination that it "occupies idle facilities or has idle capacity based upon" one of five factors before TFC can consider the agency's request). Because this appeal merely addresses whether the trial court had jurisdiction over the claims asserted, we decline to reach the issue of whether Novak violated the Cross Park lease at this time.

We sustain Appellants' third issue as to Broadmoor's ultra vires claim against Niles. We overrule Appellants' third issue as to Broadmoor's ultra vires claim against Novak with regard to whether Novak violated TFC regulations. We do not reach whether Novak violated the Cross Park lease at this stage of the proceedings.

### III. Cross Park's Declaratory Judgment Act Claim

Cross Park in its live petition seeks a judgment against Appellants "declaring that the 88th Texas Legislature did in fact appropriate funds to pay rent to [Cross Park] in satisfaction of the State Lessee's obligations under the [Cross Park] Lease for the 2024 and 2025 fiscal years." Appellants in their second issue argue that this

claim is barred by sovereign immunity as to the State, TFC, and HHSC because it does not include a challenge to the validity or constitutionality of a statute. Appellants also argue that declaratory relief would not resolve the underlying controversy—a breach of contract claim—between these parties. Appellants further contend that declaratory judgment claims cannot be brought against state officials and so Cross Park's claims against Novak and Niles are barred by immunity. Cross Park responds that declaratory relief would resolve the underlying controversy and that such relief can be sought against state officials.

Cross Park's Uniform Declaratory Judgment Act ("UDJA") claims against the State, TFC, HHSC, and Niles are fully barred by sovereign immunity. We do not reach whether Cross Park's claim is barred as to Novak. "A declaratory judgment requires a justiciable controversy as to the rights and status of parties actually before the court for adjudication, and the declaration sought must actually resolve the controversy." *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163–64 (Tex. 2004). Cross Park's requested declaration would not "actually resolve" the controversies between these parties. Rather, this declaration is only instrumental in resolving the other claims Cross Park raises—its breach of lease and ultra vires claims.

For the breach of lease claim against the State Entities, Cross Park argues that the requested declaration will show that the attempted termination of the Cross Park lease was invalid because the Legislature did appropriate sufficient funds. But "[w]hether the Legislature appropriated sufficient funds to pay the rent is not enough on its own to show the State Entities violated the lease—that is the task of the breach of lease claim." *Broadmoor*, 2026 WL 668284, at *11. In order for a breach of lease claim to succeed, the State Entities must be parties to the lease and immunity of said parties must be waived. As shown in Part I, HHSC and TFC are not parties to the Cross Park lease and no waiver of immunity applies to the State, which means the

15

breach of lease claim fails against the State Entities. "Without a viable breach of lease claim to latch onto, granting relief to [Cross Park's] UDJA claim as to the State Entities would not 'actually resolve' the controversies as to these parties and so too fails." *Id.*

For the ultra vires claims against Niles and Novak, Cross Park contends a declaration that the Legislature appropriated sufficient funds for the Cross Park lease will show that Novak and Niles' attempt to terminate the lease due to lack of funding was unlawful. Regarding Niles, such a declaration would again be insufficient because "the proper inquiry is whether Niles failed to perform a ministerial act by not certifying such funds were available under Section 2167.101."[11] *Id.* As explained in Part II.A., Niles' determination as to the availability of funds to pay for the Cross Park lease is a matter of discretion per Section 2167.101 in this instance and so is not subject to an ultra vires claim. Because no ultra vires claim has been adequately alleged, granting the requested declaratory relief would not resolve the dispute between Niles and Cross Park.

Regarding the ultra vires claim against Novak, we have held that Cross Park has sufficiently alleged Novak acted ultra vires by violating two TFC regulations. For the same reasons stated in Part II.B., we do not reach at this time whether Cross Park has sufficiently alleged its UDJA claim as to Novak.[12] "That is, if Novak violated the lease termination procedures in the TFC regulations, the UDJA claim as to Novak may not need to be decided depending on what steps TFC takes after such

---

[11] As noted in Part II.A., Cross Park has waived the issues as to whether Niles violated termination procedures under the TFC regulations or the Cross Park lease.

[12] We only note that, contrary to what Appellants argue, Cross Park can seek declaratory relief against state officials. *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002) ("Private parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority.").

a determination." *Id.* at 12.

We sustain Appellants' second issue as to the UDJA claims against the State, TFC, HHSC, and Niles. We do not reach this issue as to the UDJA claim against Novak.

## CONCLUSION

We reverse the trial court's order denying Appellants' plea to the jurisdiction as to (1) Cross Park's breach of lease claim against the State Entities; (2) Cross Park's ultra vires claim against Niles; and (3) Cross Park's UDJA claim against the State Entities and Niles. We render judgment dismissing these claims from the case.

We affirm the trial court's order as to Cross Park's ultra vires claim against Novak as to his alleged TFC regulation violations. We do not reach the issue of whether Novak acted ultra vires under the terms of the Cross Park lease. We also do not reach Cross Park's UDJA claim as to Novak.

We remand to the trial court for further proceedings in accordance with this opinion.

/s/ April Farris
April Farris
Justice

Panel consists of Chief Justice Brister and Justices Field and Farris.