**AFFIRM; and Opinion Filed July 27, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00661-CV

**IN THE MATTER OF THE MARRIAGE OF S.C. AND M.C.
AND
IN THE INTEREST OF C.E.C., A CHILD**

**On Appeal from the 417th Judicial District Court
Collin County, Texas
Trial Court Cause No. 417-52684-2012**

## MEMORANDUM OPINION
Before Justices Bridges, Fillmore, and Brown
Opinion by Justice Fillmore

Pro se appellant M.C. appeals from the final decree of divorce (the divorce decree) dissolving his marriage with S.C. In five issues, M.C. contends the trial court erred: (1) in the division of the marital estate and the order of child support; (2) in ordering supervised visitation; (3) by failing to sign the divorce decree in a timely manner; (4) by failing to rule on matters other than conservatorship, child support, and visitation in the divorce decree; and (5) by not applying the doctrine of quantum meruit in distribution of the assets and debts of the marital estate. In his sixth issue, M.C. argues that section 117.54(B) of the Texas Local Government Code violates his right to due process. We affirm the trial court's judgment.

**Background**

M.C. and S.C. married on March 14, 2009. They lived in the home in Wichita Falls, Texas, that M.C. purchased before their marriage. M.C. was later honorably discharged from the military and began employment with Argo Data Resources Corporation in Richardson, Texas. M.C. moved to McKinney, Texas in November or December 2009 so that he could reside near the location of his new job. M.C. and S.C. subsequently purchased a home in McKinney. S.C. moved from Wichita Falls to McKinney in May 2010 when her employment with the Social Security Administration was transferred to the agency's Sherman, Texas office. Their child, C.E.C., was born on April 5, 2012.

M.C. and S.C. separated on May 11, 2012, when S.C. and C.E.C. moved out of the marital home in McKinney. S.C. and C.E.C. relocated to Sherman. S.C. filed for divorce on May 29, 2012, alleging irreconcilable differences. M.C. filed a counter-petition for divorce alleging the marriage had become insupportable because of discord or conflict of personalities. Before trial, S.C. filed an amended petition for divorce in which she alleged she left the marital home because: M.C. is mentally unstable, threatened to commit suicide, and has an addiction to pornography; she feared for her and C.E.C.'s safety; and M.C. committed adultery. In her amended petition for divorce, S.C. requested M.C.'s visitation with C.E.C. be supervised. She also requested the community estate be reimbursed by M.C. for funds expended by the community estate for the benefit of M.C.'s separate real property and for payment by the community estate of debts incurred by M.C. prior to their marriage.

A trial before the court was conducted on November 18, 2013. On May 8, 2014, the trial court signed the divorce decree. M.C. filed this appeal of the divorce decree.

**Child Support and Division of Marital Estate**

In his first issue, M.C. contends the trial court "entered an inordinately lop-sided" divorce decree in favor of S.C.[1] More specifically, M.C. argues the trial court abused its discretion in the division of the community property and debts and the child support ordered in the divorce decree. M.C. notes that the trial court made no findings of fact in connection with the divorce decree; however, M.C. made no request for findings of fact. M.C. stated he would "like a new trial;" however, M.C. did not file a motion for new trial in the trial court.

*Standard of Review*

We review a trial court's judgment concerning child support and division of property for an abuse of discretion. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Reisler v. Reisler*, 439 S.W.3d 615, 619 (Tex. App.—Dallas 2014, no pet.); *see also In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.) (most appealable issues in family law cases are evaluated for abuse of discretion). A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without any references to guiding rules and principles. *Worford*, 801 S.W.2d at 109; *see also Gonzalez v. Gonzalez*, 331 S.W.3d 864, 866 (Tex. App.—Dallas 2011, no pet.). An abuse of discretion generally does not occur if some evidence of a substantive and probative character exists to support the trial court's decision. *Gonzalez*, 331 S.W.3d at 866; *In re A.L.E.*, 279 S.W.3d 424, 428 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Where, as here, a party does not request findings of fact, we infer that a trial court made all the necessary findings to support its judgment. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989).

---

[1] We note that in their appellate briefs, both parties reference documents that are attached to their briefs as appendixes but are not part of the record on appeal. In addition, M.C. references in his appellate brief documents that were not offered or admitted as evidence at trial. The trial court specifically advised the parties at trial that it would not consider documents not admitted as evidence at trial. On appeal, we do not consider documents not admitted as evidence and made part of the appellate record. *See Monsanto Co. v. Davis*, 25 S.W.3d 773, 781 (Tex. App.—Waco 2000, pet. dism'd w.o.j.) (when reviewing merits of trial court's decision, we are limited to considering material before the court at time it ruled; as general rule, documents not admitted into evidence are not considered by appellate court).

*Property Division*

In a divorce decree, the trial court shall order a division of the parties' estate in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage. TEX. FAM. CODE ANN. § 7.001 (West 2006). The trial court is afforded broad discretion in dividing the community estate, and we must indulge every reasonable presumption in favor of the trial court's proper exercise of its discretion. *In re C.A.S.*, 405 S.W.3d 373, 384 (Tex. App.—Dallas 2013, no pet.); *see also Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981).

The property division need not be equal, and a trial court may consider many factors when exercising its broad discretion to divide the marital property. *Murff*, 615 S.W.2d at 699; *In re C.A.S.*, 405 S.W.3d at 384. Such factors include the nature of the marital property, the relative earning capacity and business opportunities of the parties, the parties' relative financial condition and obligations, the parties' education, the size of separate estates, the age, health, and physical conditions of the parties, fault in breaking up the marriage, the benefit the innocent spouse would have received had the marriage continued, and the probable need for future support. *Murff*, 615 S.W.2d at 699; *In re C.A.S.*, 405 S.W.3d at 384. The party complaining of the division of the community estate has the burden of showing from the evidence in the record that the trial court's division of the community estate was so unjust and unfair as to constitute an abuse of discretion. *In re C.A.S.*, 405 S.W.3d at 384.

In the divorce decree, M.C. was awarded the 2011 Ford F-150 truck in his possession, S.C. was awarded the 2010 Lexus ES350 in her possession, and M.C. and S.C. were each assigned the debt remaining on the respective vehicles. M.C. complains the couple had equity of about $2,000 in S.C.'s vehicle for which he was not awarded compensation in the divorce

decree. However, the evidence at trial establishes neither the equity in M.C.'s vehicle nor the debt owed on the respective vehicles at the time of trial.

M.C. and S.C. were each awarded rights to, and proceeds from, their respective profit-sharing, retirement, Keogh, pension, 401(k), stock option, employee savings, and disability plans, and accrued unpaid bonuses and other benefits, existing by reason of past, present, or future employment. Evidence admitted at trial established M.C.'s retirement savings was valued at $28,912.30, and S.C.'s thrift savings plan through her employer was valued at $27,283.11.

M.C. was awarded cash, including funds on deposit in banks, savings institutions, or other financial institutions, in accounts held by M.C. individually or from which M.C. has the sole right to withdraw funds. Evidence admitted at trial established the balances in those accounts awarded to M.C. totaled $432.60. S.C. was awarded cash, including funds on deposit in banks, savings institutions, or other financial institutions, in accounts held by S.C. individually or from which S.C. has the sole right to withdraw funds. Evidence admitted at trial established the balances in those accounts awarded to S.C. totaled $1,630.93.

With regard to division of debts, M.C. is required to pay the balance due on the promissory note relating to the purchase of the McKinney home. However, the trial court awarded the McKinney home, the single largest asset of the marital community, to M.C. as his sole and separate property, subject to a judgment lien in favor of S.C. "[f]or the purpose of a just and right division of property made in the decree" in the amount of $11,104.96, which represented half of the amount of equity in that property at the time of trial.

Evidence at trial established the credit card debt allocated to M.C. in the divorce decree totaled $30,137.26. However, of that sum, $9,170.40 represents debt owed on a credit card account opened by M.C. after the date of separation. Further, the evidence established that of the total credit card debt, over $2,682.22 was owed by M.C. prior to the marriage and over $8,300 in

cash advances and charges were incurred to repair and update M.C.'s Wichita Falls home, and increase the value of that separate property, prior to its sale. M.C. was assigned the balance of the debt owing on a $15,000 personal loan obtained by M.C. after the date of separation.[2] In his brief, M.C. complains that the divorce decree did not require S.C. to reimburse him "for community money" in the amount of $6,300 withdrawn by S.C. However, evidence at trial established that M.C. agreed that S.C., who was on maternity leave at the time the couple separated, should withdraw the $6,300 to provide for the needs of S.C. and C.E.C.

The record contains limited evidence of the value of assets or debts of the community estate. However, as set out above, the record contains evidence of a substantive and probative character to support the trial court's division of the community property. We see nothing in the record that indicates the trial court's property division was punitive, as argued by M.C., and we therefore conclude M.C. failed to establish the trial court's division of property was punitive. *See Halleman v. Halleman*, 379 S.W.3d 443, 453 (Tex. App.—Fort Worth 2012, no pet.) (overruling appellant's complaint property division was punitive because a reasonable basis supported disproportionate property division). Based on the record before us, we cannot conclude that the trial court either clearly abused its discretion or made an inequitable division of marital assets. Therefore, we will not disturb the trial court's judgment regarding the property division.

*Child Support*

M.C. argues that the trial court incorrectly calculated his monthly child support obligation as "above the 20% guidelines, and includes [his United States Department of Veterans Affairs] disability." We disagree.

---

[2] At the time of filing his counter-petition for divorce, M.C. was represented by an attorney. Although M.C. testified the loan proceeds were for payment of his attorney's fees and for psychiatric examinations ordered by the trial court, there was no documentary evidence substantiating that testimony.

The family code establishes guidelines for setting monthly child support obligations in suits affecting the parent-child relationship. *See* TEX. FAM. CODE ANN. §§ 154.121–.133 (West 2014). These guidelines are presumptively reasonable and an order of support conforming to the guidelines is presumed to be in the best interest of the child. *Id*. § 154.122(a); *see also Grotewold v. Meyer*, 457 S.W.3d 531, 534 (Tex. App.—Houston [1st Dist.] 2015, no pet.). The guidelines set child support obligations for a single child at 20% of the parent's net resources. TEX. FAM. CODE ANN. § 154.125(b).

In the divorce decree, the trial court ordered that M.C. is obligated to pay monthly child support of $1,106.63. This amount was based on evidence admitted at trial, and to which M.C. specifically stated he had no objection, that as of the date of trial, M.C.'s net resources available for child support totaled $5,533.16 per month. Therefore, his support obligation for C.E.C. per month—20% of his net resources—was calculated to be $1,106.63 per month, the amount ordered by the trial court as M.C.'s monthly child support obligation.

M.C. incorrectly asserts on appeal that his service-connected Department of Veterans Affairs (V.A.) disability benefit is not to be included as net resources under the family code. Evidence admitted at trial substantiated that M.C.'s disability is service-connected. Section 154.062 of the family code provides, in pertinent part, that:

> (a)  The court shall calculate net resources for the purpose of determining child support liability as provided by this section.
>
> (b)  Resources include:
>
> * * *
>
> > (5)  all other income actually being received, including . . . United States Department of Veterans Affairs disability benefits other than non-service connected disability pension benefits, as defined by 38 U.S.C. Section 101(17)[3] . . . .

---

[3] Under section 101(17), "non-service-connected" means, "with respect to disability or death, that such disability was not incurred or aggravated, or that the death did not result from a disability incurred or aggravated, in line of duty in the active military, naval, or air service." 38 U.S.C.A. 101(17) (2014).

TEX. FAM. CODE ANN. § 154.062 (West 2014).[4] M.C.'s service-connected V.A. disability benefit would, therefore, be included in his net resources for purposes of calculation of child support liability under section 154.062 of the family code. Based on this record, we cannot conclude the trial court abused its discretion with regard to the amount of child support ordered in the divorce decree.

*Attorney's Fees*

M.C. argues the trial court abused its discretion by ordering in the divorce decree that he pay $9,441.50, representing one-half of S.C.'s attorney's fees. In a divorce proceeding, the trial court may within its sound discretion award attorney's fees. *See In re Jackson*, 506 S.W.2d 261, 268 (Tex. Civ. App.—Amarillo 1974, writ dism'd).[5] The allowance of attorney's fees in a divorce action involves the sound discretion of the trial court which is not to be reviewed on appeal in the absence of allegations of abuse of discretion. *Sailes v. Sailes*, 394 S.W.2d 248, 249 (Tex. Civ. App.—Beaumont 1965, no writ). That is, in a divorce suit, the trial court has the equitable power to award either spouse attorney's fees as a part of the just and right division of the marital estate. *Mandell v. Mandell*, 310 S.W.3d 531, 541 (Tex. App.—Fort Worth 2010, pet. denied). M.C. did not request findings of fact, and therefore it is implied that the trial court made all necessary findings to support its judgment. *Roberson*, 768 S.W.2d at 281.

Evidence was admitted at trial that S.C. filed her suit for divorce in good faith and upon probable grounds for divorce. Evidence was also admitted at trial regarding the reasonable and necessary amount of attorney's fees S.C. incurred in order to prosecute her divorce action against

---

[4] The provision of section 154.062(b)(5) providing for inclusion of service-connected Department of Veterans Affairs disability benefits in income for purposes of calculation of child support applies to the case at bar as it is "a proceeding to establish . . . child support pending in a trial court . . . on or after" the effective date of September 1, 2013. *See* Act of May 20, 2013, 83rd Leg., R.S., ch. 1046, §§ 4, 5, 2013 Tex. Gen. Laws 2504, 2505.

[5] Section 6.708(c) of the family code, applicable to suits for dissolution of marriage filed on or after September 1, 2013, provides that , "In a suit for dissolution of a marriage, the court may award reasonable attorney's fees and expenses." TEX. FAM. CODE ANN. § 6.708(c) (West Supp. 2014).

M.C. On this record, we cannot conclude the trial court abused its discretion in ordering M.C. to pay one-half of S.C.'s attorney's fees.

As discussed above, we cannot conclude the trial court abused its discretion in the division of the marital estate, calculation of child support, or assessing one-half of S.C.'s attorney's fees against M.C. We resolve M.C.'s first issue against him.

**Supervised Visitation**

In his second issue, M.C. asserts the trial court abused its discretion by ordering that he have supervised visitation with C.E.C. "based upon the false and/or grossly exaggerated claims of [S.C.], even though no actual proof was ever submitted by [S.C.]." In effect, M.C. complains that the trial court abused its discretion in determining the best interest of the child required that M.C. have supervised visitation.

Section 153.001 of the family code pronounces Texas public policy relating to suits affecting the parent-child relationship:

> (a) The public policy of this state is to:
>    (1)  assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child;
>    (2)  provide a safe, stable, and nonviolent environment for the child; and
>    (3)  encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage.

TEX. FAM. CODE ANN. § 153.001(a) (West 2014); *see Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002). Courts must endeavor to give meaning to these public policy imperatives as they interpret the family code. *See Lenz*, 79 S.W.3d at 14. The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child. *See* TEX. FAM. CODE ANN. § 153.002 (West 2014).

A trial court has broad discretion in determining the best interest of a child in family law matters such as custody, visitation, and possession. *Niskar v. Niskar*, 136 S.W.3d 749, 753 (Tex. App.—Dallas 2004, no pet.). A trial court's determination of the best interest of the child will

only be reversed upon a determination of an abuse of discretion because a trial court "is in the best situation to observe the demeanor and personalities of the witnesses and can 'feel the forces, powers, and influences that cannot be discerned by merely reading the record.'" *In re N.A.S.*, 100 S.W.3d 670, 673 (Tex. App.—Dallas 2003, no pet.) (quoting *In re T.*, 715 S.W.2d 416, 418 (Tex. App.—Dallas 1986, no writ).

The trial court may place conditions on visitation if they are necessary in the best interest of the child. *In re R.D.Y.*, 51 S.W.3d 314, 323 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (placing conditions on mother's right to visit not abuse of discretion if found to be in child's best interest); *Capello v. Capello*, 922 S.W.2d 218, 220 (Tex. App.—San Antonio 1996, no writ).[6] Restrictions or limitations on a parent's right to possession of or access to a child may not "exceed those that are required to protect the best interest of the child." Tex. Fam. Code Ann. § 153.193 (West 2014); *see George v. Jeppeson*, 238 S.W.3d 463, 470 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

C.E.C. was two years and one month of age at the time the divorce decree was signed. In the divorce decree, the trial court appointed M.C. possessory conservator of C.E.C. and ordered M.C.'s visitations with C.E.C. were to be supervised by his "live-in VA Caregiver" or, if M.C.'s V.A. caregiver was not available to supervise visitation, by S.C., until C.E.C. reached the age of three. These provisions in the divorce decree were ordered after the trial court heard testimony, and considered admitted evidence, regarding among other things, M.C.'s suicidal ideations contained in an e-mail he sent to S.C. which precipitated her separating from him, the medications M.C. was prescribed and the effects of those medications on him, and M.C.'s own need for caregiver supervision. The trial court also heard S.C.'s testimony regarding the fear she

---

[6] *See also Sedgwick v. Sedgwick*, No. 05-01-00711-CV, 2002 WL 651607, at *2 (Tex. App.—Dallas Apr. 22, 2002, no pet.) (not designated for publication) (primary consideration in determining conservatorship and possession of and access to the child is child's best interest).

had for her own safety and that of C.E.C., including testimony regarding a telephone call she received from M.C.'s parents in which they expressed their fear for S.C.'s and C.E.C.'s safety based on a communication they had with M.C. At trial, M.C. testified he is accompanied by a V.A. caregiver to help him remember things, such as taking medications, and to "help provide stress or anxiety relief." M.C. testified that things "not immediately relevant . . . tend[ ] to slip [his] mind," and his V.A. caregiver reminds him of those things. S.C. testified regarding her concerns about the medications M.C. was taking and their sedative effects on him.

Based on these facts, we conclude there was record evidence of a substantive and probative character supporting the trial court's decision that supervised visitation by M.C. until C.E.C. reached the age of three was in C.E.C.'s best interests. *See* TEX. FAM. CODE ANN. § 153.002; *see also Gray v. Gray*, 971 S.W.2d 212, 216 n.2 (Tex. App.—Beaumont 1998, no pet.) (holding of no abuse of discretion by trial court naturally implied that evidence contained in the record rebutted presumption that standard possession order was reasonable and was in child's best interest). Accordingly, we resolve M.C.'s second issue against him.

## Timeliness of Divorce decree

The trial of this divorce case was conducted on November 18, 2013, and the trial court signed the divorce decree on May 8, 2014. M.C. contends in his third issue that the trial court "failed to render a decision on the final decree in a timely manner in violation of [his] due process right; highly prejudicing [his] parental rights." According to M.C., the "untimely ruling was the ultimate statement of [the trial court's] displeasure with the case, with [him] and it emphasized the court prejudice against [him.]" M.C. acknowledges the divorce decree was signed, thus generating this appeal, and in his appellate brief, he seeks no relief with regard to this issue.

–11–

This issue, based on the trial court's alleged failure to timely sign the divorce decree, is moot. *See In re Douglas*, No. 14-10-00820-CV, 2010 WL 3504760, at *1 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding [mand. denied]) (mem. op.) (failure to rule on motion for entry of default judgment rendered moot by final judgment entered in case). We resolve M.C.'s third issue against him.

## Other Matters Addressed in Divorce Decree

In his fourth issue, M.C. contends the trial court ruled on conservatorship, child support, and visitation in the divorce decree but "fail[ed] to make[ ] orders on all other issues relevant to the case." Specifically, M.C. argues the trial court failed to make orders on property division, division of debts, attorney's fees, and a permanent injunction. According to M.C.'s argument, a proposed divorce decree was submitted to the trial court by S.C.'s counsel following trial, and the trial court "failed to object" to the proposed divorce decree; instead, M.C. asserts the trial court signed the divorce decree without objection *by* the trial court, and the matters contained in the proposed divorce decree that did not concern conservatorship of C.E.C., child support, and visitation were not ruled upon by the trial court in the divorce decree.

Assuming M.C. is complaining that the trial court's divorce decree did not resolve all matters "relevant to the case," M.C. did not point out to the trial court any matters purportedly "relevant to the case" that were omitted from the divorce decree. M.C. did not file a motion for new trial in the trial court, and he did not request findings of fact after the divorce decree was signed.

Further, M.C. apparently has a fundamental misunderstanding of the matters contained in the divorce decree. Contrary to his assertion that the trial court's divorce decree did not address property division, division of debts, attorney's fees, and a permanent injunction, those matters are specifically addressed in the divorce decree signed by the trial judge. A final divorce decree

–12–

is a judgment. *See Reiss v. Reiss*, 118 S.W.3d 439, 441 (Tex. 2003) (we interpret a divorce decree like any other judgment, reading the decree as a whole); *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003) (we construe divorce decrees, like judgments, as a whole to harmonize and give effect to the entire decree); *Brown v. Brown*, 236 S.W.3d 343, 347 (Tex. App.—Houston [1st Dist.] 2007, no pet) (res judicata applies to a final divorce decree just as it does to any other final judgment).

On appeal, M.C. does not request any relief with regard to his fourth issue. We resolve M.C.'s fourth issue against him.

## Quantum Meruit

In his fifth issue, M.C. argues the trial court "rubber-*stamped* [S.C.'s] version of the final decree and entered it into the record; failing to apply the doctrine of *quantum meruit* to the case in failing to assign [him] a fair portion of assets and debts—an abuse of discretion."[7] M.C. did not allege any cause of action in the trial court seeking relief on the theory of quantum meruit. This theory was not raised in the trial court, but is raised for the first time on appeal. Where, as here, quantum meruit was not pleaded as a theory of recovery by M.C., it cannot be raised for the first time on appeal. *See Centex Corp. v. Dalton*, 840 S.W.2d 952, 955 (Tex. 1992) (even if quantum meruit might have afforded an alternate ground of recovery, it was not pleaded, and judgment must be based upon pleadings); *Aetna Cas. & Sur. Co. v. Chapel Hill Indep. Sch. Dist.*, 860 S.W.2d 667, 671 (Tex. App.—Tyler 1993, no writ) (quantum meruit cannot be urged for the first time on appeal). We resolve M.C.'s fifth issue against him.

---

[7] The right to recover in quantum meruit is "based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." *Campbell v. Nw. Nat'l Life Ins. Co.*, 573 S.W.2d 496, 498 (Tex. 1978). Recognizing that quantum meruit is founded on unjust enrichment, the essential elements of a quantum meruit claim are: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (2) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged. *Vortt Expl. Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990) (citing *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985)).

**Section 117.054 Texas Local Government Code**

In his sixth issue, M.C. asserts section 117.54(B) of the Texas Local Government Code violates his right to due process "where there is no protection afforded to cases involving division of community property." In a single sentence in his appellate brief regarding this issue, M.C. states he "feels that he has been highly prejudiced in this regard." S.C. responds that there is no section 117.54(B) of the local government code, the provisions of chapter 117 of that code do not appear to have any relevance or bearing on this case,[8] and, therefore, M.C.'s due process rights could not have been violated as a matter of law.

An appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). Failure to cite applicable authority or provide substantive analysis waives an issue on appeal. *Gator Apple, LLC v. Apple Texas Rests., Inc.*, 442 S.W.3d 521, 538 (Tex. App.—Dallas 2014, pet. denied). We conclude nothing is presented for our review on this issue. *See id.* We resolve M.C.'s sixth issue against him.

---

[8] S.C. is correct that there is no section 117.54(B) of the local government code. Chapter 117 of the local government code, entitled "Depositories for Certain Trust Funds and Court Registry Funds," contains a section 117.054, which provides:

> (a) If a special or separate account earns interest, the clerk, at the time of withdrawal, shall pay in a manner directed by a court with proper jurisdiction the original amount deposited into the registry of the court and any interest credited to the account in the manner calculated in Subsection (b).

> (b) The interest earned on a special account or a separate account shall be paid in the following amounts:

> > (1) 10 percent of the interest shall be paid to the general fund of the county to compensate the county for the accounting and administrative expenses of maintaining the account; and

> > (2) 90 percent of the interest shall be credited to the special or separate account.

TEX. LOC. GOV'T CODE ANN. § 117.054 (West 2008). We note that nothing in the record indicates any funds existed in the registry of the court at the time the divorce decree was signed.

**Conclusion**

Having resolved M.C.'s issues against him, we affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

140661F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

IN THE MARRIAGE OF S.C. AND M.C.
AND
IN THE INTEREST OF C.E.C., A CHILD

No. 05-14-00661-CV

On Appeal from the 417th Judicial District
Court, Collin County, Texas,
Trial Court Cause No. 417-52684-2012.
Opinion delivered by Justice Fillmore,
Justices Bridges and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee S.C. recover her costs of this appeal from appellant M.C.

Judgment entered this 27th day of July, 2015.